# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES FIELDS, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-518-F |
| | ) |
| OKLAHOMA COUNTY DETENTION | ) |
| CENTER, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, a state inmate appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter has been referred to the undersigned magistrate judge for preliminary review, for conducting any necessary hearings, including evidentiary hearings, for the entry of appropriate orders as to non-dispositive matters, and for the preparation and submission of proposed findings and recommendations as to dispositive matters as referenced in 28 U.S.C. § 636(b)(1)(B) and (C). Upon preliminary review, it is recommended that this action be summarily **DISMISSED**.

### I. BACKGROUND

Plaintiff purportedly brings this action against the Oklahoma County Detention Center ("OCDC"); Sheriff John Wetsel (sic); Armor-Medical Health Administrator Carter; Nurse Sheila, OCDC; Nurse Karen, OCDC; Dr. Childs, OCDC; Eight John or Jane Doe Defendants employed by the OCDC in relation to nursing, the law library, mail room, commissary and inmate trust accounts; Armor-Med John Does related to inmate co-payments; Detention Officer Norvas, OCDC; and Telmate John and Jane Does. (ECF No.

1:1-3). Plaintiff's Complaint sets forth a limited number of specific claims and consists primarily of vague and/or incoherent allegations arising from his time detained in the OCDC.[1] The undersigned will address each of the claims and allegations below.

## II. SCREENING REQUIREMENT

The Court must review each complaint brought by a prisoner (a) with respect to prison conditions; or (b) who is proceeding *in forma pauperis. See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2)(B). In such circumstances, the Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

## III. DISCUSSION

### A. Claims against Oklahoma County Detention Center

It is recommended that any claims against the OCDC be dismissed. The capacity of an entity to be sued is determined by the law of the state in which the federal district court is located. Fed. R. Civ. P. 17(b). Pursuant to Oklahoma law, each organized county can sue and be sued. Okla. Stat. tit. 19, § 1. The authority of each Oklahoma county is exercised by its board of county commissioners, Okla. Stat. tit. 19, § 3, and a lawsuit brought against a county must be filed against the board of county commissioners of that county. Okla. Stat. tit. 19, § 4. A county jail is a subdivision of the county in which it is located, it does not possess a separate legal identity under

---

[1] According to Court records, Plaintiff is now confined in the Lexington Assessment and Reception Center located in Lexington, Oklahoma.

Oklahoma law, and therefore the OCDC cannot be sued. *See Lindsey v. Thomson*, No. 06–7114, 2007 WL 2693970, at *3 (10th Cir. Sept. 10, 2007) (affirming dismissal of § 1983 claims against police departments and county sheriff's department, entities with no apparent legal existence); *White v. Utah*, No. 00–4109, 2001 WL 201980, at *1 (10th Cir. March 1, 2001) (affirming dismissal of county jail; although applicable state law provided that county may sue or be sued, no state law supported directing a cause of action directly against a county's subdivisions, including its jails); *Aston v. Cunningham*, No. 99–4156, 2000 WL 796086, at *4 n.3 (10th Cir. June 21, 2000) (affirming dismissal of county jail as defendant in prisoner's § 1983 action on basis that "a detention facility is not a person or legally created entity capable of being sued"). Thus, any claims against the OCDC should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### B. Claims Against Sheriff Whetsel

Plaintiff names Sheriff Whetsel as a Defendant in this action. Plaintiff does not allege that Sheriff Whetsel personally participated in the events underlying any of his claims. Rather, his only allegation against Sheriff Whetsel is that he "failed to respond pretaining (sic) wanton and malicious acts." (ECF No. 1:1). To impose supervisory liability, a plaintiff first must "establish the supervisor's subordinates violated the [C]onstitution." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal quotation marks omitted). The next step is to "'show an 'affirmative link' between the supervisor and the constitutional violation.'" *Cox v. Ganz*, 800 F.3d 1231, 1248 (10th

3

Cir. 2015) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). As explained by the court in *Cox*, the "affirmative link" has three related prongs: "'(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind.'" *Id.* (quoting *Dodds*, 614 F.3d at 1195).

"[S]upervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements ... a policy ... which subjects, or causes to be subjected that plaintiff to the deprivation of any rights ... secured by the Constitution." *Cox*, 800 F.3d at 1248 (internal quotation marks omitted). The problem is Plaintiff has not stated any facts demonstrating that Sheriff Whetsel created a policy that denied Plaintiff's constitutional rights, *id.*, had "actual knowledge of past constitutional violations being carried out by a subordinate, and [did] nothing to stop future occurrences," *Dodds*, 614 F.3d at 1212 (Tymkovich, J., concurring), knew about the conduct and condoned it, *id.*, or failed to train or supervise Detention Center staff. *Id.* He makes only one conclusory, unsubstantiated statement that the Sheriff failed to respond to "wanton and malicious acts." (ECF No. 1:1). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Accordingly, Plaintiff's claims against Sheriff Whetsel should be dismissed for failure to state a claim upon which relief can be granted.

### C. Opening Mail

Plaintiff states that the OCDC mail room opened his legal mail and "did deliberately tamper with incoming 'mail-ordered' Georgetown Law Journal." (ECF No. 1:5). Though Plaintiff indicates that he intends to assert an equal protection claim based on these allegations, he alleges no facts, nor cites to any authority, supporting the finding of an equal protection violation in this regard. On the other hand, the Tenth Circuit has recognized an inmate's constitutional "right of access to the courts" may be violated by interference with the inmate's legal mail. *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005). Indeed, the opening of a prisoner's legal mail outside his presence could violate rights to access to the courts under either the First Amendment (Petition Clause) or the Fifth Amendment (Due Process Clause). *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). Regardless of its origin, to establish such a violation an inmate plaintiff must, at a minimum, show the opening of legal mail hindered his efforts to pursue a legal claim. *See Lewis v. Casey*, 518 U.S. 343, 348–55; *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Further, conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006).

Plaintiff does not assert that tampering with or the opening of his mail violated his right of access. Nor does he allege facts suggesting any actual injury to his right of access. The Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *See Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989). Accordingly, any claim based upon Plaintiff's

allegations related to his mail should be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### D. Inmate Trust

In his Complaint, Plaintiff states that the inmate trust "did harm ability to pay Western District Clerk of Court," *see* ECF No. 1:5, and purports to name Detention Officer Norvas, OCDC Inmates Trust, as a Defendant. (ECF No. 1:3). Although the court is required to exercise a liberal interpretation of plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519 (1972), the court need not assume the role of advocate for plaintiff, and he must present more than conclusory allegations in order to avoid dismissal for failure to state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Though based entirely on speculation, the Court could construe this statement as an attempt to assert a violation of Plaintiff's right of access to the courts. However, Plaintiff fails to identify any underlying legal claim he has been prevented from pursuing as a result of this alleged harm to his ability to pay this Court. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."). In any event, Plaintiff's allegations are so vague it is not even clear that right of access is his intended claim and if so, certainly he has not alleged enough factual information to support the same. Thus, this claim should be dismissed for failure to state a claim.

### E. Law Library

Plaintiff appears to assert a claim based on the fact that the OCDC does not have a law library. (ECF No. 1:2, 5). The Constitution guarantees "inmates the right to 'adequate, effective and meaningful' access to the courts." *Beville v. Ednie*, 74 F.3d 210, 212 (10th Cir. 1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). This right extends only as far as protecting inmates' ability to "attack their sentences, directly or collaterally" and "to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). While the establishment of prison law libraries and legal assistance programs are acceptable methods of fulfilling this obligation, "*Bounds* did not create an abstract, free-standing right to a law library or legal assistance...." *Id.* at 351. Thus, an inmate cannot establish a violation of his right of access to the courts merely by establishing that a prison law library or legal assistance program is inadequate in some respect, or even nonexistent. *Id.* Instead, to present a valid denial of access claim a plaintiff must show that he suffered "actual injury" due to the alleged unconstitutional deprivations. *Id.* Specifically, the plaintiff must demonstrate that the alleged shortcoming or shortcomings have hindered his efforts to pursue a nonfrivolous legal claim. *Id.*; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) ("[A]n inmate must satisfy the standing requirement of 'actual injury' by showing that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim.").

In this case, while Plaintiff alleges that the OCDC has no library, he makes no allegation that he suffered any injury as a result. Specifically, he does not allege that

7

the inadequacies prohibited him from pursuing a cause of action in this, or any other, Court. Accordingly, the undersigned recommends that Plaintiff's claim premised on the lack of a law library be dismissed.

### F. Medical Related Claims

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments. The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on denial or delay of necessary medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components: "an objective component requiring that the ... deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). In the objective analysis, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotations omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotations omitted)).

Here, Plaintiff's allegations consist of the following: (1) detention officers took his diabetic shoes and his wheelchair after he arrived at the OCDC; (2) he was denied an extra mattress; (3) he was "taken-off diabetic finger stick seven (7) times, now insulin dependant (sic)"; (4) two nurses, in retaliation, housed Plaintiff on the second-floor instead of the "medical thirteenth floor"; and, (5) "numerous medical co-payments, though chronic-issues." (ECF No. 1:4). These allegations are far too vague to sufficiently allege the two prongs of an Eighth Amendment claim. For example, Plaintiff fails to indicate how long he was without his wheel chair and diabetic shoes, though from the Complaint it is clear his wheelchair was returned at some point because he complains the slider doors caused him to break a wheel on his wheelchair. (ECF No. 1:4-5). Further, Plaintiff fails to indicate why he needed to be on the thirteenth floor, what harm he suffered by being placed on the second floor and, though he states in conclusory fashion that the nurses housed him on the second floor in retaliation, he does not explain the basis of that retaliation. (ECF No. 1:4). Plaintiff's claims are simply too vague, conclusory and at times, nonsensical, to sufficiently allege an Eighth Amendment claim and therefore, should be dismissed.

### G. Excessive Force Claim

A claim of excessive force by someone acting under color of state law arises under § 1983 if jail officials use more force than necessary to preserve safety and discipline in the prison facility. The core inquiry for an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003)(noting that a constitutional claim of excessive force must satisfy "an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," as well as "a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind"). This constitutional standard arising under the Eighth Amendment applies as well to claims of excessive force brought by pretrial detainees under the Due Process Clause. *See Parsons v. Bd. of County Comm'rs of Marshall Cnty., Kan.*, 873 F.Supp. 542 (10th Cir. 1994) (irrelevant whether plaintiff was pretrial detainee or convicted prisoner because plaintiff afforded no greater rights under Due Process Clause).

Here, Plaintiff claims that while he was being booked into the OCDC, two detention officers dragged him painfully under each armpit to the rear holding cell. (ECF No. 1:4). Plaintiff cites only this single instance of force and identifies no resulting injury. The Supreme Court has held that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson*, 503 U.S. at 9, and a showing of at least *de minimis* physical injury is required. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010) (courts may not dismiss Eighth Amendment claim if only *de minimis* injury can support an Eighth Amendment claim if the use of nontrivial force was malicious and sadistic). Accordingly, Plaintiff's excessive force claim should be dismissed for failure to state a claim upon which relief can be granted.

### H. Americans with Disabilities Act ("ADA")

Plaintiff states vaguely that the OCDC's slider doors are not ADA approved and that he broke a wheel on his wheelchair because he could not tell when his chair had cleared the door. (ECF No. 1:4-5). It is not clear from the Complaint whether Plaintiff is attempting to assert an ADA claim. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision extends to discrimination against inmates detained in a county jail. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that "[s]tate prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government'" (quoting 42 U.S.C. § 12131(1)(B)); see also *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

To state a claim under Title II, a plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *See* 42 U.S.C. § 12132; *Robertson*, 500 F.3d at 1193. Notably, individual Oklahoma County officers or employees are not subject to personal liability under the ADA. *See Butler v. City of*

*Prairie Village. Kan.,* 172 F.3d 736, 744 (10th Cir. 1999) (holding that The Tenth Circuit has specifically held that there is no individual liability under the ADA).

Plaintiff does not allege specifically that he is a person with a disability, nor does he assert a separate claim for relief under Title II of the Americans with Disabilities Act. Further, it is not clear Plaintiff could sufficiently allege such a claim if indeed that were his intent. Regardless, if Plaintiff intends to pursue a Title II ADA claim in this action, he must assert the claim, with supporting factual allegations.

### I. Telmate

Finally, Plaintiff states, "Telmate charged $25.00 3-way call, charged for three (3) visitations that did not 100% materialize." (ECF No. 1:5). This allegation, standing alone, is far too vague to establish any legal claim, much less one of constitutional magnitude for § 1983 purposes. Based on the Court's own brief research, it appears Telmate is a company offering communication services to various detention centers nationwide. See http://www.telmate.com/. Thus, it is unlikely Plaintiff could assert a viable claim under § 1983, as "the only proper defendants in a § 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)) (internal quotations omitted). Moreover, to the extent Plaintiff intended to assert a state law claim against Telmate, he has wholly failed to identify the same.

## IV. RECOMMENDATION

In light of the foregoing discussion, it is hereby recommended that this action be **DISMISSED** pursuant to 28 U.S.C. § 1915. Plaintiff's claims asserted against Defendant Oklahoma County Detention Center should be dismissed with prejudice for failure to state a claim upon which relief can be granted. Plaintiff's remaining claims should be dismissed without prejudice for failure to state a claim upon which relief can be granted.

Plaintiff is advised of his right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Any such objections must be filed with Clerk of the District Court by **January 11, 2016.** Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation **DISPOSES OF ALL ISSUES** referred to the undersigned magistrate judge in this matter.

**ENTERED** on December 23, 2015.

*/s/ Shon T. Erwin*
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE